UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.

C3 REVENUE CYCLE
SOLUTIONS, LLC,

    Plaintiff,

v.

LITTLETON HOSPITAL
ASSOCIATION d/b/a LITTLETON
REGIONAL HEALTHCARE,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES

Plaintiff C3 Revenue Cycle Solutions, LLC ("C3") sues Littleton Hospital Association d/b/a Littleton Regional Healthcare ("LRH") and alleges as follows:

### NATURE OF THE ACTION

1.    This lawsuit arises from LRH's failure to pay C3 for services that C3 performed for LRH in violation of the parties' Consulting Services Agreement dated February 3, 2021 (the "Agreement") and Florida law.

### PARTIES & JURISDICTION

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based upon the complete diversity of the citizenship of the respective parties and the amount in controversy exceeds $75,000.00, exclusive of attorneys' fees and costs.

3. C3 is a Florida limited liability company located in Hillsborough County, Florida that offers revenue cycle services to healthcare providers. All of C3's members are citizens of Florida.

4. LRH is a New Hampshire non-profit corporation with its principal place of business located in Littleton, New Hampshire that offers healthcare services to the public.

5. LRH is subject to personal jurisdiction in Florida pursuant to Fla. Stat. § 685.101 and § 685.102 because the Agreement contains a choice of law and forum selection clause, which provides that "any action to enforce or construe any provision of this Agreement may be brought only in the state or federal courts located in Hillsborough County, Florida, notwithstanding the appropriateness of the jurisdiction the [sic] courts of any other state." Agreement, § 13.3. Further, the Agreement involved services in the aggregate exceeding $250,000, the parties agreed that the Agreement "shall be construed and enforced under the laws of the State of Florida," and the Court's exercise of personal jurisdiction over LRH does not offend due process under the U.S. Constitution.

6. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(3) and (c)(2).

7. All conditions precedent to the filing, maintenance, and prosecution of this action have been satisfied, fulfilled, extinguished, waived, or otherwise excused.

## GENERAL ALLEGATIONS

8. LRH operates as an acute care and medical center in Littleton, New Hampshire. In addition to providing medical services to patients, LRH bills healthcare insurers, Medicare, and Medicaid for those services.

9. C3 is a women-owned revenue cycle company that contracts with providers like LRH to assist providers in maximizing their revenue. C3 offers services such as medical billing support, utilization review and management, audit and recovery, claim denials management, and other consulting services.

**A.    The Parties' Consulting Services Agreement**

10. On February 3, 2021, the parties entered into the Consulting Services Agreement (the "Agreement").

11. Under the Agreement, C3 was to assist LRH with its Medicare billing by providing support staff. Agreement, Exhibit 1.

12. The initial term of the Agreement was three years. Agreement, § 3.0.

13. The Agreement required LRH's "cooperation and functional support to ensure [C3] personnel are able to effectively provide the Services." Agreement, § 2.1.

14. Under the Agreement, LRH agreed to pay C3 for its services. *Id.*, § 2.2. Specifically, payment was due "thirty (30) business days after the date of the invoice" and if the invoices were not timely paid within 45 days of the date of the invoice, "[C3] reserves the right to immediately suspend or terminate performance of Services" and further "reserves the right to assess a 1.5% late fee per month . . . ." *Id.*, § 2.5.

15. Originally, the Agreement could be terminated with or without cause with 30-days written notice. A for-cause termination is defined as "a material breach of this Agreement." *Id.*, § 4.3.

16. The notice of termination for cause is required to "identify[] the alleged breach of the Agreement . . . ." After a proper notice is received, the "breaching party shall have thirty (30) days from the date of the notice to cure the breach to the reasonable satisfaction of the non-breaching party." *Id.*, § 4.3.

17. Recognizing the importance of the parties' new business arrangement, the Agreement provides that C3 "shall be [LRH's] exclusive provider of the Services contemplated under this Agreement . . . ." *Id.*, § 4.4.

18. The Agreement also contained an attorneys' fees provision awarding the prevailing party's costs, "including reasonable attorneys' fees" in "any action or proceeding in court to enforce any provision hereof or for damages by reason of an alleged breach of any provision of this Agreement, including addendums or exhibits . . . ." *Id.*, § 13.4.

**B.  Statement of Services #6**

19. The parties amended the Agreement effective December 20, 2021, greatly expanding the services that C3 provided to LRH. Statement of Services #6 ("SOS #6") expanded C3's services to include: (1) taking over responsibility for all of LRH's aged accounts receivable effective January 1, 2023; (2) working payment variances in Cerner, which is a software system that was used by LRH; (3) a physician

underpayment audit and recovery program, and (4) revenue integrity/charge audit and pricing services.

20. The fee structure was as follows:

a. For accounts receivable aged 90 days from bill date, LRH would pay C3 a contingency fee of 20% of collections but not less than $82,000 per month and no more than $125,000 per month.

b. For Cerner variances, LRH agreed to pay C3 a contingency fee of 25% of recoveries.

c. For physician underpayments, LRH agreed to pay C3 a contingency fee of 25% of recoveries for claims in Paragon or ECW with dates of services in 2022 and 43% of recoveries on all other claims.

d. For the revenue integrity work, LRH agreed to pay C3 a prospective revenue capture rate that was a 25% contingency fee of "Annualized Implemented and Validated Benefit above $500,000" with a base fee of $125,000. However, if the annualized implemented and validated benefit was $500,000, then no additional fees were due to C3.

21. C3 also provided several key staff personnel, including a Director of Revenue Cycle and Vice President of Revenue Cycle at no additional cost to LRH.

22. As a direct consequence of C3's large resource and financial investments to perform collections and additional services for LRH, the parties amended SOW #6 on February 27, 2023 (the "Amendment"), for the sole purpose of prohibiting LRH from terminating the Agreement without cause.

23. SOW #6 ensured C3 was financially protected given its significant investments to perform the services.

24. Effective February 27, 2023, the parties amended the Agreement. The amendment changed the termination provision of the Agreement:

> Notwithstanding any termination provision set forth herein to the contrary, this Agreement shall remain in full force and effect so long as any SOS remains effective, and any attempted termination of this Agreement shall be delayed until all SOS' have been terminated in accordance with their terms.

25. The amendment also provided an initial two-year term for the work outlined in SOW#6. Further, within the two-year term, the Agreement could only be terminated "(i) upon mutual consent of the parties; or (ii) for cause, as provided in Sections 4.3 and 4.4 of the Agreement."

26. The parties also agreed that the statement of services "shall survive any termination without cause by [LRH] of the Agreement."

27. As a direct result of C3's charge audit work, C3 identified $4,780,020.13 in prospective net revenue capture.

28. Effective January 17, 2023, the parties further amended the Agreement, providing that C3 "shall take over the responsibility of all of [LRH's] third party billing effective 1/16/23." This amendment further provided that LRH would pay $28,000 per month for those services.

**C.   LRH Breached the Agreement**

29. C3 complied with its contractual obligations by providing all services contained in the statements of work and sent LRH invoices for March, April, May, and June 2023. The invoiced total was $1,568,823.83.

30. LRH's first breach of the Agreement was when it failed to pay those invoices timely.

31. On or around May 18, 2023, C3 discussed a proposal with the hopes of salvaging the business relationship and Agreement.

32. Rather than terminating the Agreement (as was C3's right), C3 permitted LRH to be two months in arrears so long as the March invoice was paid in full by May 31, 2023, and, beginning June 1, 2023, LRH pay $53,000 per week.

33. This proposal, however, did not include payments of $917,299.78 that was owed for C3's charge audit work because C3 had agreed to defer payment until after LRH was caught up with its other invoices.

34. LRH's second breach of the Agreement occurred on or around May 18, 2023, when LRH's chief financial officer, Steven Shaffer, informed C3 that it wished to separate with C3 and that R1 RCM, Inc., a competitor revenue cycle management company, was taking over C3's work in violation of the Agreement's exclusivity provision.

35. On May 25, 2023, LRH sent a notice to C3 purporting to terminate the Agreement without cause.

36. However, Mr. Shaffer informed C3 that he would like C3 "to continue with the legacy work indefinitely if we can arrange that."

37. C3 attempted to resolve the dispute in good faith over the course of several weeks through counsel.

38. The parties were unable to reach an agreement.

39. On June 23, 2023, LRH again sent a notice of termination identifying what it believed to be cause. The notice was nothing more than a laundry list of made-up milestones and performance indicators—none of which were referenced in the Agreement.

40. Following the second notice of termination, Mr. Shaffer mandated that C3 would perform duties during the "cure period" that were never part of the Agreement.

41. C3 responded to LRH's notice of termination on June 27. On June 28, 2023, LRH breached the Agreement again when it terminated C3's access to LRH's systems, which effectively precluded C3 from curing any purported breach.

## COUNT I - BREACH OF CONTRACT

42. C3 realleges and incorporates paragraphs 1 through 41 as if fully stated here.

43. C3 and LRH entered into the Agreement and Statements of Work, which are valid and enforceable contracts.

44. C3 performed its obligations under the contract and provided services to LRH under the terms of the Agreement.

45. C3 sent invoices to LRH for those services pursuant to the Agreement totaling $1,568,823.83.

46. LRH is obligated to pay those invoices under the Agreement.

47. LRH breached the Agreement by failing to pay C3 for the services it performed under the Agreement.

48. Section 5.2 of the Agreement provides that C3 shall be the exclusive provider of services under the Agreement. LRH breached the Agreement by contracting with R1 RCM, Inc., in violation of this exclusivity provision.

49. As modified by SOW #6, C3's work with LRH had a term of two-years and could only be terminated by mutual consent of the parties or for cause. SOW #6. LRH breached SOW #6 by unilaterally terminating the contract without cause in violation of SOW #6.

50. C3 has suffered damages as a result of LRH's breach of the Agreement and Statements of Work.

51. C3 has suffered past damages exceeding $1,568,823.83, which includes past damages on unpaid invoices and breach of the exclusivity provision, as well as future damages in the form of lost revenue in an amount to be determined at trial.

## COUNT II – ACCOUNT STATED

52. C3 realleges and incorporates paragraphs 1 through 41 as if fully stated here.

53. C3 and LRH entered into the Agreement and Statements of Work.

54. LRH agreed to pay invoices that it received from C3 in accordance with the Agreement and Statements of Work.

55. C3 invoiced LRH for the services that C3 performed for LRH in March, April, May, and June 2023, which totaled $1,568,823.83.

56. LRH did not object to the invoices. Accordingly, LRH agreed and was required to pay those invoices promptly under the Agreement.

57. LRH failed to pay the above invoices.

58. LRH owes C3 the amount of $1,568,823.83 with interest on the account.

## **PRAYER FOR RELIEF**

WHEREFORE, C3 requests that judgment be entered in its favor and against LRH, awarding the following:

  i. Compensatory damages;

  ii. Interest as provided under Section 2.5 of Agreement;

  iii. Prejudgment and post-judgment interest;

  iv. Attorneys' fees as provided under Section 13.4 of the Agreement,

  v. Costs and expenses; and

  vi. Such other relief as the Court deems just and equitable.

Dated: August 18, 2023.                    WOLFE | PINCAVAGE
                                           *Counsel for C3*
                                           7800 SW 57th Avenue
                                           Suite 217
                                           Miami, FL 33143
                                           Office: 786.409.0800

                                           */s/ David L. DaPonte*
                                           Douglas A. Wolfe

        Fla. Bar. No.: 28671
        doug@wolfepincavage.com
        Cristina B. Rodriguez
        Fla. Bar No.: 639982
        cristina.rodriguez@wolfepincavage.com
        David L. DaPonte
        Fla. Bar No.: 1002724
        david.daponte@wolfepincavage.com